UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-80145-CR-KAM(s)

UNITED STATES OF AMERICA

vs.

RAYMUNDA TORRES,

    **Defendant.**
_____/

PLEA AGREEMENT

The United States of America and Raymunda Torres (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to Count 1 of the Superseding Indictment. Count 1 charges the defendant with a conspiracy to sex trafficking and importation of an alien for immoral purposes, in violation of Title 18, United States Code, Section 371.

2. The United States agrees to seek dismissal of the remaining counts against the defendant after sentencing.

3. The defendant is aware that the sentence will be imposed by the Court after considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a Pre-Sentence Investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is

1

also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4. The defendant also understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of up to five (5) years for Count 1 and up to three (3) years of Supervised Release. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000 and may order restitution.

5. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 4 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.

6. The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office") reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's

background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7. The United States and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court impose a sentence *within the advisory sentencing guideline range* produced by application of the Sentencing Guidelines. Although not binding on the probation office or the Court, the United States and the defendant further agree that, except as otherwise expressly contemplated in this Plea Agreement, they will jointly recommend that the Court neither depart upward nor depart downward under the Sentencing Guidelines when determining the advisory sentencing guideline range in this case.

8. The United States agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will make a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. The United States further agrees to recommend that the defendant be sentenced at the low end of the guideline range, as that range is determined by the Court. The United States, however, will not be required to make this motion and these

recommendations if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

9. The defendant also agrees that the defendant shall assist this Office in all proceedings, whether administrative or judicial, involving the forfeiture to the United States of all rights, title, and interest, regardless of their nature or form, in all assets, including real and personal property, cash and other monetary instruments, wherever located, which the defendant or others to his/her knowledge have accumulated as a result of illegal activities. Such assistance will involve an agreement on defendant's part to the entry of an order enjoining the transfer or encumbrance of assets which may be identified as being subject to forfeiture, including but not limited to those specific real and personal properties set forth in the forfeiture counts of the indictment. Additionally, the defendant agrees to identify as being subject to forfeiture all such assets, and to assist in the transfer of such property to the United States by delivery to this Office upon this Office's request, all necessary and appropriate documentation with respect to said assets, including consents to forfeiture, quit claim deeds and any and all other documents necessary to deliver good and marketable title to said property.

10. The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all

rights conferred by Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or a variance from the guideline range that the Court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b).  However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that he has discussed the appeal waiver set forth in this agreement with his attorney. The defendant further agrees, together with the United States, to request that the district court enter a specific finding that the defendant's waiver of his right to appeal the sentence to be imposed in this case was knowing and voluntary.

11. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety.  The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

12. This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings unless contained in a letter from the United States Attorney's Office executed by all parties and counsel prior to the change of plea.

JEFFREY H. SLOMAN
ACTING UNITED STATES ATTORNEY

Date: 8/7/09       By: _____
                        DANIEL L. RASHBAUM
                        ASSISTANT UNITED STATES ATTORNEY

Date: 7/28/09      By: _____
                        NATHAN CLARK
                        ATTORNEY FOR DEFENDANT

Date: 07/28/09     By: _____
                        RAYMUNDA TORRES
                        DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-80145-CR-KAM(s)

UNITED STATES OF AMERICA

vs.

RAYMUNDA TORRES,
SERGIO GONZALEZ-RAMOS, et al.

       Defendants.
_____/

### Factual Proffer for Raymunda Torres and Sergio Gonzalez-Ramos

      On September 5, 2008, law enforcement rescued a minor victim, Y.B. who had been victimized by a prostitution/human trafficking ring associated with the one described by several other victims who are cooperating in this case. On or around October 2007, Y.B., who was at the time 14 years old, was illegally smuggled into the United States by her "husband"/trafficker, defendant Timoteo Reyes-Perez. She was initially taken to live in Queens, New York. Soon after, she was transported and housed in Atlanta, Georgia where she was forced to prostitute herself. In February 2008, Y.B. was brought to Miami, Florida. She and Reyes-Perez lived with co-conspirator Arturo Rojas Gonzalez. Y.B. and other women (some being minors) were moved weekly from locations in Homestead, West Palm Beach, and Ft. Myers for purposes of prostitution. Y.B. took law enforcement to several of the residences that she knew the traffickers were using as either brothels or "stash" houses. Search warrants were conducted at these residences, and her information was repeatedly corroborated. Two of the residences that she identified were a brothel located at 1704 Lake Avenue in West Palm Beach and run by defendants Sergio Gonzalez-Ramos and Raymunda Torres, and a stash house located at 805 Bradley Street in West Palm Beach, ~~where the defendant lived.~~

      Y.B. told law enforcement that the first location that she was forced to prostitute in South Florida was a brothel located at 1704 Lake Avenue, West Palm Beach, Florida that was run by defendants SERGIO GONZALEZ-RAMOS and RAYMUNDA TORRES, who are married. She said that in the Spring/Summer of 2008, co-defendant ARTURO ROJAS-GONZALEZ and TIMOTEO REYES-PEREZ arranged for her to work in this brothel, and ARTURO ROJAS-GONZALEZ dropped her off at the brothel. ~~Y.B. said that when she arrived at the brothel she was given by RAYMUNDA TORRES high heels and clothing to wear for work.~~ She worked daily beginning as early as 10 a.m. While working at the residence, johns would purchase rocks from SERGIO GONZALEZ-RAMOS, and they would then give Y.B. those rocks for sexual services. After performing those services, Y.B. would give these rocks to either GONZALEZ-RAMOS or TORRES, who would pay Y.B. Y.B. worked there for approximately one week.

She described how during that week she made approximately $2500 by servicing over a hundred clients. According to Y.B., TIMOTEO REYES-PEREZ, ARTURO ROJAS-GONZALEZ, SERGIO GONZALEZ-RAMOS and RAYMUNDA TORRES all knew she was a minor, and all knew that she was illegally in the United States. Notably, Y.B. stated that she worked at this location several times in the Summer 2008, and she witnessed other women working at the residence as well.

When a search of the residence was conducted, law enforcement arrested the two defendants. Also found at the residence were several ledger books containing names, tally sheets, and phone numbers. Numerous bottles of personal lubricant were found; hundreds of condoms; several wire transfers; and dozens of items of lingerie.

Subsequently, Y.B. identified GONZALEZ-RAMOS and TORRES in photo lineups. GONZALEZ-RAMOS is illegally in the country; TORRES has a T-visa.

Additionally, in November 2008, law enforcement (in West Palm Beach, Florida) rescued another minor victim of prostitution and smuggling, A.D. A.D. was being trafficked and living with co-conspirator Berduo Lopez. A.D. had been smuggled into the U.S. when she was 16 years old. A.D. also identified, among other co-conspirators, the defendants in a photo lineup. She said that she worked for them on several occasions; that they knew that she was a minor; and that they knew that she was here illegally. A.D. said that Ester, Berduo-Lopez, Reymunda Torres, and Sergio Gonzalez Ramos all worked together in the business. She also identified Y.B. in a photo lineup, and said that she was also trafficked by these individuals.

_____
Marlene Rodriguez, AUSA

_____
Raymunda Torres, Defendant

_____
Nathan Clark, Torres' Attorney

_____
Sergio Gonzalez-Ramos, Defendant

_____
Joel DeFabio, Gonzalez-Ramos' Attorney