```
 1                   UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                   Case No. 08-80145-CR-MARRA
 3

 4  UNITED STATES OF AMERICA,)
                             )
 5          Plaintiff,       )
                             )
 6      -v-                  )
                             )
 7  ARTURO ROJAS-GONZALEZ,   )
                             )
 8          Defendant.       )   West Palm Beach, Florida
                             )   May 7, 2009
 9  _____)   10:01 a.m.

10

11                       PAGES 1 - 35

12              TRANSCRIPT OF PLEA PROCEEDINGS

13           BEFORE THE HONORABLE ANN E. VITUNAC

14                  U.S. MAGISTRATE JUDGE

15

16  Appearances:

17
    For the Government:        DANIEL L. RASHBAUM
18                             Assistant United States Attorney
                               99 NE 4th Street
19                             Miami, Florida  33132

20  For the Defendant:         ROBIN ROSEN-EVANS
                               Assistant Federal Public Defender
21                             450 Australian Avenue, Suite 500
                               West Palm Beach, Florida  33401
22
                               Spanish Interpreter Present.
23
    Reporter:                  Karl Shires, RPR, FCRR
24  (561) 514-3728             Official Court Reporter
                               701 Clematis Street, Suite 258
25                             West Palm Beach, Florida  33401
```

STENOGRAPHICALLY RECORDED COMPUTER-AIDED TRANSCRIPT

```
 1          (Call to Order of the Court.)

 2               THE COURT:  Be seated, please.  Good morning.

 3               All right.  This is United States of America versus

 4     Arturo Rojas-Gonzalez, Case 08-80145-Criminal-Hurley.

 5               May I have counsels' representations.

 6               MR. RASHBAUM:  Good morning, your Honor.  Daniel

 7     Rashbaum on behalf of the United States.

 8               THE COURT:  Good morning, counsel.

 9               MS. ROSEN-EVANS:  Good morning, your Honor.  Robin

10     Rosen-Evans on behalf of Mr. Rojas-Gonzalez who is to my left.

11               THE COURT:  Good morning.  And I don't think he can

12     hear.

13          (Pause in Proceedings.)

14               THE INTERPRETER:  Sorry, your Honor.

15               THE COURT:  That's all right.

16               Good morning, sir.

17               THE DEFENDANT:  Good morning.

18               THE COURT:  Would you raise your right hand, please,

19     sir.

20          (The Defendant was duly sworn.)

21               THE COURT:  Thank you.

22               Tell me your full name, please, sir.

23               THE DEFENDANT:  Arturo Rojas-Gonzalez.

24               THE COURT:  Sir, the oath that you have just taken

25     requires you to answer my questions truthfully.  And Rule 11
```

1   requires me to warn you that if you don't answer my questions

2   truthfully, then you face possible perjury charges or contempt

3   of court.

4          Do you understand that, sir?

5          THE DEFENDANT:  Yes.

6          THE COURT:  We're here this morning because I'm told

7   that you wish to change your previously entered plea of not

8   guilty to guilty pursuant to a plea agreement.

9          Is that true, sir?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Before I can do that I need to make sure

12  that you understand that I'm a United States magistrate judge

13  and not an Article III district court judge like Judge Hurley.

14  You have the right to trial, judgment, and sentence before an

15  Article III district court judge.  And you also have the right

16  to have your plea heard -- if you choose not to go to trial,

17  you have the right to have your plea heard by an Article III

18  district court judge like Judge Hurley.  If you wish me to

19  conduct this plea hearing, I can only do so with your consent.

20         Have you had an opportunity to discuss this issue with

21  your lawyer?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Do you wish to consent to enter your plea

24  before me, the United States magistrate judge, or would you

25  rather exercise your right to have your plea heard by Judge

```
 1    Hurley?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  Do you want me to take your plea or Judge

 4    Hurley?  Do you have any idea what I'm talking about?

 5              MS. ROSEN-EVANS:  I did go through this with him, your

 6    Honor.  May I have a moment?

 7              THE COURT:  Certainly.

 8         (Defendant and counsel conferring sotto voce.)

 9              MS. ROSEN-EVANS:  I think we can go forward, your

10    Honor.

11              THE COURT:  Mr. Rojas-Gonzalez, you have the right to

12    have Judge Hurley hear your guilty plea or you can agree to

13    allow me to hear your guilty plea.

14              THE DEFENDANT:  Yes.

15              THE COURT:  It will be Judge Hurley who sentences you

16    in this case.  I will not be the judge who sentences you.

17              Do you understand that?

18              THE DEFENDANT:  Yes.

19              THE COURT:  Do you want me to take your guilty plea or

20    do you want Judge Hurley to take your guilty plea?

21              THE DEFENDANT:  You.

22              THE COURT:  All right, sir.  Do you have any questions

23    about that?

24              THE DEFENDANT:  No.

25              THE COURT:  All right, sir.  Even though we're talking
```

1    about you pleading guilty this morning, I want to make sure

2    that you understand that no one wants you to plead guilty

3    unless you are, in fact, guilty of the offense to which you are

4    pleading guilty and you personally have decided that it is in

5    your best interest to enter this guilty plea.

6            Have you made that decision?

7            THE DEFENDANT:  Yes, I've taken that decision.

8            THE COURT:  Do you need anymore time to discuss that

9    decision with your lawyer?

10           THE DEFENDANT:  No.

11           THE COURT:  Now, if at any time this morning you don't

12   understand something that I'm saying, please stop me.  You can

13   raise your hand or speak out and stop me and ask me to

14   re-explain whatever it is that you need to have explained.  All

15   right?

16           THE DEFENDANT:  Okay.

17           THE COURT:  And also, if at any time this morning you

18   should change your mind and decide that you really don't want

19   to plead guilty to this crime, then stop me and we will set

20   aside whatever we have done this morning and we will set you

21   for trial in this matter.  And you need to understand that

22   nothing that you have said here this morning to me can be used

23   against you if you change your mind and decide that you really

24   don't want to plead guilty, you would rather have a trial.

25           Do you understand that?

```
1                THE DEFENDANT:  Yes.

2                THE COURT:  But once we go through this proceeding if

3     you decide at the end of this proceeding to actually plead

4     guilty, then you will not have a trial.

5                Do you understand that?

6                THE DEFENDANT:  Yes.

7                THE COURT:  Have you discussed all of the charges of

8     this case with your lawyer Ms. Rosen-Evans?

9                THE DEFENDANT:  Yes.

10               THE COURT:  Have you discussed with her what the

11    evidence in this case might be if there were to be a trial and

12    how you might defend yourself if there were to be a trial?

13               THE DEFENDANT:  Yes, your Honor.

14               THE COURT:  Would you move that microphone to his

15    mouth.  Thank you.

16               I've been handed a copy of a plea agreement which is

17    six pages long.  Do you have a copy of that in front of you?

18               THE DEFENDANT:  Yes.

19               THE COURT:  Was this read to you in Spanish?

20               THE DEFENDANT:   In Spanish?

21               MR. RASHBAUM:  Judge, I'm sorry to interrupt.  Just

22    for the record, this plea agreement was given to the defense

23    counsel and the defendant several weeks ago.  I believe that

24    that was read to him and he went through it.  Today I provided

25    them with an exact copy of that same plea agreement.  Just for
```

1  the record, it is the same copy that he was given several weeks

2  ago.

3           MS. ROSEN-EVANS:  I just -- I went through the plea

4  agreement with Mr. Rojas with an interpreter.  He executed it.

5  I sent it to Mr. Rashbaum, the executed, the original.  He

6  didn't have access to it this morning so he asked us to sign

7  another one.  So I explained that to Mr. Rojas this morning.

8  So he had some questions.  He wanted to make sure it was the

9  same agreement.

10          THE COURT:  Were there any changes made to this

11  agreement whatsoever?

12          MS. ROSEN-EVANS:  Mr. Rashbaum assures me there were

13  not.

14          MR. RASHBAUM:  No, your Honor.

15          THE COURT:  All right.  Well, we're going to go over

16  it line by line just to make sure you understand what's in this

17  piece of paper.

18          Did you read in full with a Spanish interpreter the

19  copy of the plea agreement that you got several weeks ago?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Did you discuss this plea agreement with

22  your lawyer?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Are you satisfied with her advice and

25  services to you regarding this case and this plea agreement?

1          THE DEFENDANT:  Yes, I am.

2          THE COURT:  All right.  Now, I need to ask you some

3   questions to make sure that you are competent to enter into

4   this guilty plea.

5          How old are you, sir?

6          THE DEFENDANT:  30 years old.

7          THE COURT:  How far did you go in school?

8          THE DEFENDANT:  I just got to first grade in high

9   school.

10         THE COURT:  And where did you go to high school?

11         THE DEFENDANT:  In Mexico.

12         THE COURT:  What was the name of the school?

13         THE DEFENDANT:  Jaime Torres Bodet.

14         THE COURT:  Before this case had you ever been to

15  court before?

16         THE DEFENDANT:  No.

17         THE COURT:  Have you ever seen a jury trial?

18         THE DEFENDANT:  No.

19         THE COURT:  When you left school -- when you left high

20  school in the first grade of high school, did you have anymore

21  schooling of any kind?

22         THE DEFENDANT:  No, not anymore.

23         THE COURT:  Do you read and write?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Have you ever been employed?

```
1              THE DEFENDANT:  Yes, I have.

2              THE COURT:  And what do you do for a living?

3              THE DEFENDANT:  I was a laborer, day laborer here in

4    the US.

5              THE COURT:  Have you ever had any other job other than

6    being a laborer?

7              THE DEFENDANT:  In Mexico I used to work at a textile

8    factory.

9              THE COURT:  Do you have family?

10             THE DEFENDANT:  Yes, I do.

11             THE COURT:  A wife, children?

12             THE DEFENDANT:  Yes, I have my wife and two children.

13             THE COURT:  Have you ever used any illegal drugs?

14             THE DEFENDANT:  No.

15             THE COURT:  Today, right now, are you under the

16   influence of anything whatsoever that might affect your ability

17   to think and to understand me and these proceedings?

18             THE DEFENDANT:  I'm fine.

19             THE COURT:  We want to make sure that you're

20   clearheaded and that you really understand what you're doing

21   here today.  Okay?

22             THE DEFENDANT:  Okay.  Yes.  Yes.

23             THE COURT:  You're fine?

24             THE DEFENDANT:  Yes, I'm fine.

25             THE COURT:  How is your physical health?
```

1          THE DEFENDANT:  Thank God I'm fine.

2          THE COURT:  Have you ever been adjudged to be insane

3     or incompetent?

4          THE DEFENDANT:  No.

5          THE COURT:  Have you ever been under the care of a

6     mental health expert?

7          THE DEFENDANT:  No.

8          THE COURT:  We want to make sure that mentally you

9     understand everything.  Okay?

10         Mr. Rojas-Gonzalez, the United States Constitution

11    guarantees you the right to a trial by jury.  And as you sit

12    here right now today you are presumed to be innocent of the

13    charges against you, and that presumption of innocence stays

14    with you unless and until it is overcome by the evidence.  And

15    that can be done either by a trial or by a guilty plea to the

16    charges in this case which is backed up by a proffer of

17    evidence showing that you are guilty of the crime.

18         Do you understand that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  One of the purposes of this plea

21    conference is to make sure that you understand your right to a

22    jury trial and your right to the presumption of innocence and

23    to make sure that you understand you are giving up both of

24    those rights if you plead guilty this morning.

25         Do you understand that?

1          THE DEFENDANT:  Yes, I understand.

2          THE COURT:  Do you understand that you are under no

3     obligation whatsoever to come into this Court and plead guilty?

4     You have the right to tell me right now my plea is not guilty,

5     I want a trial, and I want 12 people from the community to sit

6     as my jury and to listen to all of the evidence and for them to

7     decide a verdict in this case.

8          Do you understand that?

9          THE DEFENDANT:  Yes, I understand.

10          THE COURT:  If there were to be a trial, people from

11     the community would come and they would be selected by the

12     lawyers and the Court to serve on a jury.

13          Do you understand that?

14          THE DEFENDANT:  Yes, I understand.

15          THE COURT:  You would have the right to be present in

16     the courtroom for the entire trial, from the beginning until

17     the very end.

18          Do you understand that?

19          THE DEFENDANT:  Yes, I understand.

20          THE COURT:  You would be entitled to have

21     Ms. Rosen-Evans seated beside you during the entire trial.

22          Do you understand that?

23          THE DEFENDANT:  Yes, I understand.

24          THE COURT:  And you are entitled to be represented by

25     a lawyer for the trial whether you can afford to pay for that

1    lawyer or not.

2          Do you understand that?

3          THE DEFENDANT:  Yes, I understand.

4          THE COURT:  If there were to be a trial, the burden of

5    proving your guilty is 100 percent on the Government to prove

6    beyond and to the exclusion of every reasonable doubt that you

7    are guilty of the offense with which you are charged.  You do

8    not have to prove that you are innocent.  The Government must

9    prove that you are guilty.

10         You're under no obligation to even speak at a trial.

11   You could sit there and never say a word during the entire

12   trial, and your lawyer never say a word during the entire

13   trial, and you could still be found not guilty if the

14   Government did not prove your case beyond a reasonable doubt.

15         Do you understand that?

16         THE DEFENDANT:  Yes, I understand.

17         THE COURT:  The Government has the right to call

18   witnesses who would testify under oath and they would take a

19   witness stand much like this and swear to tell the truth.  They

20   would take the same oath that you just took this morning, and

21   they would be subject to the penalties of perjury if they

22   didn't tell the truth.

23         Do you understand that?

24         THE DEFENDANT:  Yes, I understand.

25         THE COURT:  If there were a trial, you would be able

1  to listen to the Government's witnesses and to discuss their

2  testimony with your lawyer, and your lawyer would have the

3  opportunity to stand up and question those witnesses, to

4  cross-examine them in an attempt to point out any weaknesses or

5  inconsistencies in their testimony.

6          Do you understand that?

7          THE DEFENDANT:  Yes, I understand.

8          THE COURT:  You are entitled to have the Court issue

9  orders requiring people to come to testify on your behalf at

10  trial whether they want to or not.

11          Do you understand that?

12          THE DEFENDANT:  I understand.

13          THE COURT:  You have the right to testify yourself if

14  you choose to do so to tell your side of the story.  You would

15  take that same oath, take the witness stand, and testify just

16  like any other witness in the case.

17          Do you understand that?

18          THE DEFENDANT:  I understand.

19          THE COURT:  But you also have the absolute right not

20  to testify if you decide that it is not in your best interest

21  to take that witness stand and testify.  You have the right to

22  remain silent.  And should you decide not to testify, then the

23  Court, Judge Hurley, would tell the jury that that's a right

24  that's guaranteed to you by the constitution, and Judge Hurley

25  would instruct the jury that they could not consider the fact

1    that you had not testified as evidence against you in trying to

2    decide a verdict in the case.

3            Do you understand that?

4            THE DEFENDANT:  Yes, I understand.

5            THE COURT:  If you plead guilty this morning, there

6    will be no trial, no jurors will be summoned to the courthouse,

7    there will be no testimony, no cross-examination, no argument,

8    no jury instructions to the jurors.  If you plead guilty this

9    morning and I accept your plea, I'm going to adjudge you guilty

10   of this offense this morning.

11           Do you understand that?

12           THE DEFENDANT:  Yes, I understand.

13           THE COURT:  And then you're going to go before Judge

14   Hurley for sentencing in approximately 70 days.

15           Do you understand that?

16           THE DEFENDANT:  Yes, I understand.

17           THE COURT:  Let's go over this plea agreement

18   together.  This plea agreement says that you're pleading guilty

19   to Counts 1 and 2 of a superseding indictment.  Count 1 charges

20   you with conspiracy to sex trafficking and importation of an

21   alien for immoral purposes in violation of 18 USC 371.  Count 2

22   charges you with knowingly in and affecting interstate and

23   foreign commerce harboring, transporting, and providing a minor

24   to engage in a commercial sex act in violation of 18 USC

25   1591(a)(1), (b)(2), and 2.

1          Do you understand that those are the counts to which

2    you are pleading guilty?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Paragraph 2 says that at sentencing the

5    Government will dismiss or drop Counts 7, 12, 17, and 18.

6          Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Paragraph 3 says that your sentence will

9    be imposed by Judge Hurley after he considers the Federal

10   Sentencing Guidelines and policy statements.  That he will

11   compute an advisory sentence under the guidelines and though

12   that advisory sentence will be determined in part on the

13   results of a presentence investigation which will be conducted

14   by the Court's probation office, and that investigation will

15   start after you plead guilty today.

16         Do you understand that?

17         THE DEFENDANT:  Yes, I understand.

18         THE COURT:  Okay.  Even though there is an advisory

19   sentence under the guidelines, you need to understand that

20   Judge Hurley can raise or lower the advisory sentence under the

21   guidelines.

22         Do you understand that?

23         THE DEFENDANT:  Yes, I understand.

24         THE COURT:  Judge Hurley is required to consider the

25   advisory guideline range, but he is not required to give you

1  that sentence under the guideline range.  His sentence can be

2  more severe or less severe than the guideline range.

3          Do you understand that?

4          THE DEFENDANT:  Yes, I understand.

5          THE COURT:  Judge Hurley can give you any sentence up

6  to the statutory maximum allowed by law, and you cannot

7  withdraw this guilty plea as a result of the sentence imposed.

8          Do you understand that?

9          THE DEFENDANT:  I understand.

10         THE COURT:  And lastly, Paragraph 3 says that you

11 understand that Count 2 carries -- and I'm going to add an "R"

12 to that word -- carries a ten-year mandatory minimum sentence.

13         Do you understand that?

14         THE DEFENDANT:  Yes, I understand.

15         THE COURT:  That means you must serve ten years in

16 prison as a minimum sentence.

17         Do you understand that?

18         THE DEFENDANT:  Yes, I understand.

19         THE COURT:  Paragraph 4 says you understand that the

20 Court may impose a statutory maximum of up to five years in

21 prison for Count 1 and up to life imprisonment for Count 2

22 followed by supervised release of up to life.

23         Do you understand that?

24         THE DEFENDANT:  Yes, I understand.

25         THE COURT:  And you have a mandatory minimum of ten

1    years' imprisonment as to Count 2.  Also, the Court may impose

2    a fine of $250,000 as to each count, and restitution.

3              Do you understand that?

4              THE DEFENDANT:  Yes, I understand.

5              THE COURT:  So in deciding whether or not to plead

6    guilty you need to realize that you face a ten-year mandatory

7    minimum up to life imprisonment, supervised release of up to

8    life, and a $250,000 fine.

9              Do you understand that?

10             THE DEFENDANT:  Yes, I understand.

11             THE COURT:  Do you have any questions about that?

12             THE DEFENDANT:  No.

13             THE COURT:  Paragraph 5.  You have to pay a $200

14   special assessment at the time you're sentenced.

15             Paragraph 6.  The prosecutor's office reserves the

16   right to tell Judge Hurley all relevant information about the

17   crimes and everything they know about you and your background

18   subject only to the express terms of any agreed-upon sentencing

19   recommendations.  They further reserve the right to make any

20   recommendation to Judge Hurley concerning the quality and

21   quantity of punishment.  And generally that means they reserve

22   the right to recommend where you serve your sentence and how

23   long a sentence you will serve.

24             Do you understand that?

25             THE DEFENDANT:  Yes, I understand.

1          THE COURT:  Seven.  Though not binding on Judge

2    Hurley, the parties have agreed that they're going to recommend

3    that he sentence you within the advisory guideline range.

4    Although not binding on probation or the Court, they further

5    agree that they are jointly going to recommend that Judge

6    Hurley neither depart upward or depart downward from the

7    advisory guideline range computed in this case.

8          Do you understand that?

9          THE DEFENDANT:  I understand.

10          THE COURT:  So that's a recommendation that they're

11    making that Judge Hurley does not have to follow it.

12          Do you understand that?

13          THE DEFENDANT:  I understand.

14          THE COURT:  Paragraph 8 says the United States is

15    going to recommend at sentencing that Judge Hurley reduce or

16    lower by two levels the sentencing guideline level applicable

17    to your offense because you have accepted personal

18    responsibility for your crime.  If you score out to 16 or

19    greater -- have you discussed the scoring with your lawyer

20    under the sentencing guidelines?

21          THE DEFENDANT:  Yes.

22          THE COURT:  If you score out to be 16 or greater, then

23    the Government, the prosecutor, says it will make a motion

24    requesting an additional one-level decrease because you saved

25    the Government the cost of going to trial.

```
 1              Further, the Government is going to recommend that you

 2   be sentenced at the low end of the guideline as that range is

 3   determined by the Court.  In return for that you must make a

 4   full, accurate, and completes disclosure to the probation

 5   office of the circumstances surrounding this crime, you must

 6   not have misrepresented facts to the Government prior to

 7   entering into this plea agreement, and, three, you must not

 8   commit any bad acts after today.

 9              Do you understand that?

10              THE DEFENDANT:  Yes, I understand.

11              THE COURT:  And do you agree to this?

12              THE DEFENDANT:  Yes.

13              THE COURT:  Nine.  Defendant also agrees that he will

14   assist the prosecutor in all proceedings, whether

15   administrative or judicial, involving the forfeiture to the

16   United States of his right, title, and interest regardless in

17   their nature or form and all assets including real and personal

18   property, cash, or other monetary instruments wherever located

19   which you or others have to your knowledge accumulated as the

20   result of illegal activities, and you're going to assist them

21   in the transfer to the United States of those properties.

22              Now, are there any properties subject to this

23   paragraph?

24              MR. RASHBAUM:  Judge, not specifically on this.

25              THE COURT:  You can join him at counsel table.
```

1          MR. RASHBAUM:  This is Jonathan Cruz from ICE.

2          Not specifically, your Honor, with regards to this

3   defendant, although there is a conspiracy charge.  So later on

4   with regards to other defendants, yes, your Honor.

5          THE COURT:  Okay.  Defendant is aware -- Paragraph 10

6   deals with your appellate rights.  Ordinarily pursuant to Title

7   18, United States Code, 3742 you have the right to appeal the

8   sentence imposed in the case.  However, this paragraph says you

9   are giving up your right to appeal any sentence imposed, any

10  restitution order, or the manner in which sentence is imposed

11  unless -- you can still appeal if the sentence exceeds the

12  statutory maximum or if it is the result of an upward departure

13  from the guidelines or if the Government appeals, then you can

14  appeal.

15          Do you understand that?

16          THE DEFENDANT:  Yes, I understand.

17          THE COURT:  Other than those three instances you

18  cannot appeal the sentence imposed or the manner in which it

19  was imposed or any collateral challenge.  Do you understand

20  that?  Or It doesn't say that in this one.  Do you understand

21  that?

22          THE DEFENDANT:  No, I don't understand.

23          THE COURT:  Okay.  You can appeal only in three

24  circumstances.  If the sentence exceeds the statutory maximum

25  allowed by law.  In Count 1 the statutory maximum is five years

1  in prison.  Let's say Judge Hurley gave you ten years in prison

2  as to Count 1.  That would be an illegal sentence because it

3  exceeds the statutory maximum.  So you could appeal that to

4  another Court if he made a mistake and did that.

5         Secondly, you can appeal if in the advisory guideline

6  range your sentence turned out to be 20 years, if he gave you

7  30 years, you could appeal that sentence because it exceeded

8  the advisory guideline range.

9         Do you understand that?

10         THE DEFENDANT:  Yes, I understand.

11         THE COURT:  Thirdly, if the Government takes an appeal

12  for whatever reason, then you get to appeal also.

13         Do you understand that?

14         THE DEFENDANT:  I understand.

15         THE COURT:  Other than those three times you cannot

16  appeal.

17         Do you understand that?

18         THE DEFENDANT:  Yes, I understand.

19         THE COURT:  Okay.  Have you discussed that appellate

20  issue with your lawyer?

21         THE DEFENDANT:  Yes, I have talked to her about it.

22         THE COURT:  Do you want anymore time to talk to her

23  about that issue?

24         THE DEFENDANT:  No.

25         THE COURT:  Do you have any questions about your

```
 1    appellate rights?

 2              THE DEFENDANT:  No.

 3              THE COURT:  All right.  I find that this waiver is

 4    knowing and voluntary.

 5              11 says you are aware that your sentence has not yet

 6    been determined by Judge Hurley.  Judge Hurley has probably

 7    never seen you before and no presentence investigation has been

 8    done because you have not yet pleaded guilty, correct?

 9              THE DEFENDANT:  Yes.

10              THE COURT:  So if you have said to your lawyer how

11    much time am I going to get in prison and she's given you a

12    figure, you need to understand that that is her educated guess

13    on what your sentence is going to be and that does not bind the

14    Probation Department or Judge Hurley, and you are not going to

15    be allowed to withdraw this guilty plea if you get more time in

16    prison than you thought you were going to get.

17              Do you understand that?

18              THE DEFENDANT:  Yes, I understand.

19              THE COURT:  No one can promise you what your sentence

20    will be in this case because no one knows what your sentence is

21    going to be in this case.

22              Do you understand that?

23              THE DEFENDANT:  Yes, I understand.

24              THE COURT:  Do you still want to plead guilty?

25              THE DEFENDANT:  Yes.
```

1         THE COURT:  And do you understand that you cannot

2    withdraw this guilty plea if Judge Hurley gives you more time

3    in prison than you thought you were going to get?

4         THE DEFENDANT:  Yes, I understand.

5         THE COURT:  Paragraph 12 says this is the entire

6    agreement and understanding between the United States and you,

7    there are no other agreements, promises, representations or

8    understandings unless they are contained in a letter from the

9    US Attorney's Office executed by all parties and counsel prior

10   to the change of plea.

11         Is there any such letter?

12         MR. RASHBAUM:  There is not a letter, your Honor.

13         THE COURT:  Okay.  So is Paragraph 12 correct that

14   there are no other agreements, promises, or representations

15   except what's in this piece of paper?  Is that true?

16         THE DEFENDANT:  It's true.

17         THE COURT:  Has anyone promised you anything at all

18   that's not in this piece of paper, in this plea agreement?

19         THE DEFENDANT:  No.

20         THE COURT:  At the bottom of Page 6 is the typed

21   Arturo Rojas-Gonzalez.  Did you sign this?  Is this your

22   signature?

23         THE DEFENDANT:  Yes.

24         THE COURT:  And was this entire agreement read to you

25   by a Spanish interpreter?

```
 1              THE DEFENDANT:  Yes.
 2              THE COURT:  Has anyone made you any side promises of
 3     any kind that are not contained in this written plea agreement?
 4              THE DEFENDANT:  No.
 5              THE COURT:  Has anyone threatened you or coerced you
 6     in any way whatsoever to get you to plead guilty?
 7              THE DEFENDANT:  No.
 8              THE COURT:  Has anyone threatened you or coerced you
 9     in any way to get you to give up your right to a jury trial?
10              THE DEFENDANT:  No.
11              THE COURT:  Are you pleading guilty freely and
12     voluntarily?
13              THE DEFENDANT:  Yes.
14              THE COURT:  Are you pleading guilty because you are,
15     in fact, guilty of the offenses to which you are pleading
16     guilty?
17              THE DEFENDANT:  Yes.
18              THE COURT:  Mr. Rojas-Gonzalez, I'm going to ask the
19     Government to take the lecturn and to tell us two things.  For
20     each crime I want to know what the elements of the crime are
21     that the Government would have to prove if this case were to go
22     to trial.  Secondly, I'm going to ask the Government to tell us
23     what evidence they have to prove the elements of the crime.
24              I'm going to ask you to pay close attention because
25     when Mr. Rashbaum is finished, I'm going to turn to you and ask
```

1   you if you committed the acts that he alleges that you did.  So

2   pay close attention to his presentation.  All right, sir?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Thank you.

5          Mr. Rashbaum.

6          MR. RASHBAUM:  Judge, the defendant is pleading guilty

7   to two counts in this case.  The first count is a conspiracy

8   count.  The Government would have to show, one, an agreement

9   between the defendant and others, including the named

10  defendants in this indictment, to, A, knowingly recruit,

11  entice, harbor, transport, and provide a person through

12  interstate and foreign commerce knowing that that person was

13  under 18 years of age and providing that person to engage in a

14  commercial sex act.  That would be one object of the

15  conspiracy.

16         Another object of the conspiracy would be to knowingly

17  import into the United States, either directly or indirectly,

18  an alien for the purposes of prostitution and harboring that

19  individual.  That would be another object or another part of

20  the conspiracy.  That would be the elements for Count 1, your

21  Honor.

22         With regards to Count 2, the Government would need to

23  prove that in or around February 2008 and continuing through on

24  or about September 5, 2008, the defendant knowingly recruited

25  harbored, transported, and provided a person, that person being

 1   an individual named YB, knowing that YB was under 18 years of

 2   age, provided them through interstate and foreign commerce to

 3   engage in a commercial sex act.   In this case prostitution.

 4   Those would be the elements in regards to Count 2.

 5         With regards to the factual proffer, if this case went

 6   to trial the Government would show, among other things, that on

 7   September 5, 2008, law enforcement rescued a minor victim,

 8   initials YB, who had been victimized by a human trafficking

 9   ring associated with the one described by other victims who

10   were at the time cooperating in this case.

11         On or around October 2007, YB was illegally smuggled

12   into the United States by her husband, also her trafficker,

13   Defendant Timoteo Reyes-Perez, who is a fugitive in this

14   indictment.   At the time YB was 14 years old.   She was

15   initially taken to live in Queens, New York.   Soon thereafter

16   she was transported and forced to prostitute herself in

17   Atlanta, Georgia.

18         In February 2008, she was brought to Miami, Florida.

19   There she and Reyes-Perez were harbored by the Defendant,

20   Arturo Rojas-Gonzalez, in Kendall, Florida.   The defendant knew

21   that YB was under 18 years of age at the time and knew that she

22   was in the United States illegally.

23         The defendant was also residing in the United States

24   illegally and is a Mexican national.

25         YB and other women were moved weekly from locations in

1  Homestead, West Palm Beach, and Fort Myers.  Some of the time

2  by the defendant Rojas-Gonzalez.

3        Several times the defendant arranged for YB to stay

4  and work at certain brothels and stash houses throughout South

5  Florida.  This included times when YB worked for Defendants

6  Elodia Capilla Diego and Sergio Gonzalez-Ramos in West Palm

7  Beach.  On those occasions defendants Rojas-Gonzalez and

8  Reyes-Perez would be paid part of what YB made when she worked

9  as a prostitute.

10        Another individual, SG, also confirmed that

11  Rojas-Gonzalez is an individual who was involved in the

12  prostitution ring and was involved mainly in transporting

13  females, including minors, for prostitution.  She said that the

14  defendant was also involved in setting up work for women.

15        Both YB and SG identified independently the defendant

16  in a photo lineup.

17        And to give you a little bit of the background on the

18  defendant's arrest, in the summer of 2008 law enforcement was

19  informed of several places where women were being harbored for

20  prostitution.  As a result, surveillance was set up at several

21  of these locations.

22        On June 23, 2008, law enforcement saw three women and

23  a male in a green Chevrolet Venture van in Miami Florida at one

24  of those locations.  The vehicle had previously been seen at

25  several suspected stash houses being surveilled in the

1    underlying investigation.  The male driver was the defendant

2    Arturo Rojas-Gonzalez.

3         Ultimately, the vehicle was approached in Naples,

4    Florida.  Upon questioning, all three women claimed to be in

5    their mid 20s, but could not produce any documents showing

6    their identities.  The women seemed uneasy and had

7    contradicting answers to most of the questions asked by law

8    enforcement.  All three women had small notebooks containing

9    phone numbers and dates.  Below the dates were tallies

10   indicating what we believe to be how many customers they had

11   seen on the particular date.  No arrests were made at the time.

12        Later on October 27, 2008, law enforcement again

13   encountered the defendant.  He was in the same Chevrolet

14   Venture van described above with another female who goes by the

15   initials MC.  The defendant was taken into Immigration custody,

16   and MC was interviewed.

17        MC is an illegal alien who was being transported by

18   the defendant from Fort Myers to West Palm Beach.  She admitted

19   to working as a prostitute and being transported by the

20   defendant.  MC said that she came across the Mexican border

21   with the defendant and was scared to go back home.

22        YB knows MC and has told law enforcement that she was

23   transported to brothels in South Florida by the defendant and

24   others.  YB also told law enforcement that the traffickers used

25   a particular Western Union on 152nd Avenue and Sunset Drive in

1  Miami, Florida.

2         In October 2008 when Rojas-Gonzalez was arrested, law

3  enforcement found on his person Western Union receipts going to

4  Mexico from the above stated Western Union location.

5         Lastly, your Honor, with regards to this plea

6  agreement, the Government has consulted with all know victims

7  in this case who are in favor of it in lieu of going to trial.

8         THE COURT:  Mr. Rojas-Gonzalez, did you listen to the

9  Government's proffer?

10        THE DEFENDANT:  Yes.

11        THE COURT:  Do you admit the facts as stated by the

12  Government?

13        THE DEFENDANT:  They're just one thing I heard him say

14  that it said that I hosted, that I gave housing to the victim,

15  and I didn't do that.

16        THE COURT:  You did not provide housing for the

17  victim?

18        THE DEFENDANT:  No.  No, not that.

19        THE COURT:  Did you knowingly bring underage girls

20  here to the United States for purposes of prostitution?

21        THE DEFENDANT:  No.  No, not that either.

22        THE COURT:  Well, what are you pleading guilty to?

23  What did you do?

24        THE DEFENDANT:  That I transported the girls that

25  worked.

```
 1              THE COURT:  How did they work?

 2              THE DEFENDANT:  In prostitution.

 3              MR. RASHBAUM:  Your Honor, that is enough.  And I

 4    think where he's -- where I think I probably was inarticulate

 5    in the proffer, YB lived with the defendant.  I don't think he

 6    necessarily provided the housing, but she lived with him at a

 7    particular time with her trafficker and husband Timoteo

 8    Reyes-Perez.  They lived together.  And he did know that she

 9    was here illegally and a minor.

10              THE COURT:  Is that correct?

11              THE DEFENDANT:  I didn't know, but later I realized

12    that she worked in that.

13              THE COURT:  Well, how much later?  Before you were

14    arrested or after?

15              THE DEFENDANT:  Before.

16              THE COURT:  And while you were transporting her you

17    knew that it was for purposes of prostitution; is that true or

18    not true?

19              THE DEFENDANT:  The first two times that I transported

20    them I didn't know.  And the other two times that I transported

21    them I imagined that they were working on that.

22              THE COURT:  You imagined or you knew?

23              THE DEFENDANT:  I imagined at the beginning, and

24    later -- later I imagined, but I didn't want to tell them

25    anything, you know.  It was their lives, you know.
```

```
1            MR. RASHBAUM:  Your Honor, I don't think that meets
2       the qualifications of the statute.  He has to knowingly.
3            THE COURT:  Let me take a brief recess.  You all visit
4       with one another and I'll be back.
5            THE COURTROOM DEPUTY:  All rise.  The Court is in
6       recess.
7         (Recess at 10:48 a.m.)
8         (Court called to order at 10:59 a.m.)
9            THE COURT:  Be seated, please.  Thank you.
10           Okay.  Where are we, folks?
11           MS. ROSEN-EVANS:  Well, Judge, I've explained to
12      Mr. Rojas-Gonzalez --
13           THE COURT:  Would you take the lecturn so we can hear
14      you.
15           MS. ROSEN-EVANS:  I'm sorry.
16           I explained to Mr. Rojas-Gonzalez that he would be
17      entering the plea to basically knowingly transporting a minor
18      or others for the purposes of prostitution.  And that merely
19      thinking or maybe believing but not really knowing might not be
20      sufficient to enter a guilty plea.  And I think that was
21      confirmed by the prosecutor's statement that he didn't feel
22      that that was sufficient information.
23           THE COURT:  Nor do I.
24           MS. ROSEN-EVANS:  And I've explained that to
25      Mr. Rojas-Gonzalez.  He does indicate he wants to enter a
```

```
 1    guilty plea.  But I told him unless he can truthfully, since he
 2    is under oath, truthfully admit to that knowledge, than you
 3    cannot accept the plea and he needs to proceed to trial.  And
 4    the operative word is "truthfully."  And so that's where we
 5    are.  And I think you should ask him, and then we can either go
 6    forward or the case can go back to Judge Hurley.
 7            THE COURT:  Okay.  Mr. Rojas-Gonzalez, I cannot allow
 8    you to plead guilty to something that you do not admit that you
 9    did.  And you are under oath to tell the truth.
10            The charge against you is that you knowingly
11    transported a minor, someone under 18 years of age, for the
12    purposes of prostitution.
13            Did you do that or did you not do that?
14            THE DEFENDANT:  Yes, I did.
15            THE COURT:  So that when you were transporting these
16    girls, are you telling me that you knew that they were underage
17    and you knew that you were transporting them for the purpose of
18    prostitution?  Is that correct?
19            THE DEFENDANT:  Yes, it's correct.
20            THE COURT:  All right.  Anything else you want me to
21    ask him?
22            MR. RASHBAUM:  No, your Honor.
23            THE COURT:  All right.
24            MS. ROSEN-EVANS:  No.
25            THE COURT:  If you now formally admit this crime and I
```

```
 1   conclude that you're making a voluntary and informed decision

 2   to plead guilty, I'm going to accept this plea and I'm going to

 3   adjudicate you guilty of both counts to which you are pleading

 4   guilty.

 5           Do you understand that?

 6           THE DEFENDANT:  Yes, I understand.

 7           THE COURT:  And you will become a convicted felon this

 8   morning, and you will lose civil rights, if you have them.  The

 9   right to vote, the right to possess a firearm, the right to run

10   for public office, and the right to serve on a jury.

11           Do you understand that?

12           THE DEFENDANT:  Yes, I understand.

13           THE COURT:  You will also be subject to deportation.

14           Do you understand that?

15           THE DEFENDANT:  Yes, I understand.

16           THE COURT:  Do you still wish to admit this crime?

17           THE DEFENDANT:  Yes.

18           THE COURT:  All right, sir.  I've had the opportunity

19   to observe you and talk with you today, and I am satisfied that

20   you are competent to make the decision we've been talking

21   about.  I'm satisfied that you understand your right to a jury

22   trial and all of the other rights that apply.  And I'm

23   satisfied that you understand the details of this plea

24   agreement.

25           Is there anything I have not touched upon that either
```

```
 1    side wants me to address at this time?

 2              MR. RASHBAUM:  Judge, the only thing, and you may

 3    have -- I'm sorry -- deportation.

 4              THE COURT:  I did.

 5              MR. RASHBAUM:  Thank you.

 6              MS. ROSEN-EVANS:  No, your Honor.

 7              THE COURT:  Do you still wish to go forward with this

 8    plea agreement?

 9              THE DEFENDANT:  Yes.

10              THE COURT:  Do you understand that once you plead

11    guilty, you cannot take back your guilty plea?

12              THE DEFENDANT:  Yes, I understand perfectly.

13              THE COURT:  Ms. Rosen-Evans, would you kindly formally

14    change the plea on behalf of your client.

15              MS. ROSEN-EVANS:  Yes, your Honor.  At this time

16    Mr. Rojas-Gonzalez would withdraw his previously tendered pleas

17    of not guilty to Count 1 and 2 of the superseding indictment

18    and enter pleas of guilty.

19              THE COURT:  Is this what you wish to do?

20              THE DEFENDANT:  Yes.

21              THE COURT:  Mr. Rojas-Gonzalez, I find that this plea

22    is knowing and voluntary and that there's an independent basis

23    for establishing the elements of the offense.  I accept your

24    pleas of guilty.  I adjudge you to be guilty of the offenses to

25    which you have pleaded guilty.  And I'm ordering a presentence
```

```
 1   investigation to be sent to Judge Hurley.  You will hear from
 2   his chambers in approximately 70 days for sentencing.
 3          Do you understand that, sir?
 4          THE DEFENDANT:  Yes, I understand.
 5          THE COURT:  All right.  Good luck to you, sir.
 6          MS. ROSEN-EVANS:  Thank you, Judge.
 7       (Proceedings concluded at 11:04 a.m.)
 8
 9                  *     *     *     *     *
10
11              C E R T I F I C A T E
12       I, Karl Shires, Registered Professional Reporter and
13   Federal Certified Realtime Reporter, certify that the foregoing
14   is a correct transcript from the record of proceedings in the
15   above-entitled matter.
16       Dated this 13th day of September, 2010.
17
18   _____
     Karl Shires, RPR FCRR
19
20
21
22
23
24
25
```